NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTINE ANDERSON and WILLIAM O'HARA,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 15-5590 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge

This matter comes before the Court upon the motion by the defendant, State Farm Fire and Casualty Company (hereinafter, "State Farm"), for summary judgment pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 56. (ECF No. 29 through ECF No. 29-10; ECF No. 35 through ECF No. 35-2.) The plaintiffs, Kristine Anderson and William O'Hara, oppose the motion. (ECF No. 34 through ECF No. 34-10.) The Court has also heard oral argument from counsel for the parties. (ECF No. 47.) For the following reasons, the Court denies the motion for summary judgment.

## BACKGROUND

I. Facts

A. The Policy

The plaintiffs' house (hereinafter, "the House") was insured by State Farm. The

insurance policy (hereinafter, "the Policy") provided replacement coverage for structural damage to the House itself up to the amount of $366,600, and coverage for damage to the plaintiffs' personal property up to the amount of $274,950. (ECF No. 29-1 at 9; ECF No. 29-7 at 30.)

The Policy contained the following relevant conditions, with "you" and "your" referring to the plaintiffs, and "we" and "us" referring to State Farm:

> 2. Your Duties After Loss. After a loss to which the insurance may apply, you shall see that the following duties are performed:
>
> . . . .
>
>     d.    as often as we reasonably require:
>
>         (1)    exhibit the damaged property [(hereinafter, "the Display Provision")];
>
>         (2)    provide us with records and documents we request and permit us to make copies;
>
> . . . .
>
>     e.    submit to us, within 60 days after loss [(hereinafter, "the 60 Day Provision")], your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
>
> . . . .
>
>         (5)    specifications of any damaged building and detailed estimates for repair of the damage;
>
> . . . .
>
> 4. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser.
>
> . . . .
>
> 6. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

(ECF No. 29-7 at 17–18.)

### B. The Fire

A fire occurred at the House on December 9, 2013, and the plaintiffs filed a claim for the resulting damage with State Farm. (ECF No. 29-1 at 7.) On December 10, 2013, NEFCO Fire Investigations (hereinafter, "NEFCO") inspected the House, and determined that the fire had been caused by an exterior electrical outlet on a deck. (ECF No. 29-2 at 2; ECF No. 29-4 at 50.) NEFCO also noted in its report that the House was full of "clutter." (ECF No. 29-4 at 51–52.)

A State Farm representative then conducted his own inspection of the House on December 11, 2013, and determined at that inspection that it appeared that the House could be repaired. (ECF No. 29-1 at 7.) However, that State Farm representative advised the plaintiffs that a full inspection was not possible at that point because "an excessive amount of personal belongings" blocked the views of the interior structure. (ECF No. 29-1 at 12–13.)

On December 19, 2013, another State Farm representative came to inspect the House, but could not conduct a full inspection because — again — the House was "totally full of contents." (ECF No. 29-1 at 13.) That representative told the plaintiffs that he would return to complete the inspection of the House once the plaintiffs advised State Farm that the contents had been removed and that the interior of the House could be completely viewed. (*Id.*)

In April 2014, after spending approximately four months removing the contents from the House, the plaintiffs retained the services of a public adjuster. (ECF No. 29-1 at

3

14.) On April 16, 2014, a State Farm representative returned to the House to perform an inspection, but many items still remained in the House that blocked the full view of the interior structure. (*Id.*) Nevertheless, the State Farm representative performed an inspection that day.

On May 12, 2014, State Farm sent a letter to the plaintiffs that suggested a repair estimate of $179,571.37 for the House based upon the inspection that could be accomplished, which was a depreciated value from an estimated full value of $204,211, and enclosed a check in that depreciated amount. (ECF No. 29-1 at 14; ECF No. 34-9 at 7.) Even though the plaintiffs had not submitted their alleged repair costs for the House within 60 days of the loss, which as mentioned above was required under the terms of the Policy, State Farm also advised the plaintiffs that they should have a contractor review that repair estimate and provide a counter-estimate for the cost of repairing the House, if necessary. (ECF No. 29-1 at 14; ECF No. 34-9 at 7.) Furthermore, State Farm urged the plaintiffs not to perform any repairs on the House until State Farm received an estimate with supporting documentation from the plaintiffs' contractor, assuming that the plaintiffs would indeed be providing a counter-estimate for repairs. (ECF No. 29-1 at 14.) The plaintiffs did not dispute or otherwise respond to State Farm's estimate at that time.

However, around the same time that State Farm sent the aforementioned payment to the plaintiffs, and unbeknownst to State Farm, the plaintiffs met with an architect and a contractor. (ECF No. 29-1 at 16; ECF No. 29-4 at 33.) During that meeting, according to

4

the plaintiffs, the contractor told them that the floors and the subfloors of the House could not be saved, and the plaintiffs thereupon decided to demolish and rebuild the House as a result. (ECF No. 29-1 at 16; ECF No. 29-4 at 12, 33–34 (deposition of plaintiff Anderson).) The contractor actually contested this assertion in his own deposition and testified that he did not recommend to the plaintiffs that the House be demolished (ECF No. 29-1 at 28; ECF 29-5 at 8), but the Court, as it must, credits the plaintiffs' version at this juncture. What is uncontested is that the contractor then prepared an estimate for the plaintiffs for the House to be rebuilt, as opposed to an estimate for performing repairs to the House to return it to its original condition. (ECF No. 29-1 at 31.) Furthermore, it is uncontested that neither the plaintiffs nor their public adjuster advised State Farm of their decision to rebuild the House, rather than to repair it, at that point. (ECF No. 29-1 at 17-18; ECF No. 29-4 at 43–44.)

The plaintiffs' public adjuster contacted State Farm on June 9, 2014, regarding further payments for their temporary housing only. (ECF No. 29-1 at 19.) State Farm responded in writing concerning the temporary housing payments on June 11, 2014, and included a reminder to the plaintiffs to have a contractor contact State Farm if they disagreed with State Farm's estimate for the cost to repair the House. (ECF No. 29-1 at 19.)

On October 29, 2014, a State Farm representative drove by the House to check on its status. (ECF No. 29-1 at 23.) That representative encountered plaintiff O'Hara, who informed the representative that the plaintiffs intended to demolish the House and to build

5

a completely new one. (ECF No. 29-1 at 24.) In response, the State Farm representative advised O'Hara that State Farm's obligation was limited to reimbursing the plaintiffs for the costs of repairs to return the House to its original condition, and not for a complete rebuild of the House, to which O'Hara responded that he understood and raised no issues regarding State Farm's previous repair estimate. (ECF No. 29-1 at 25; ECF No. 29-5 at 31.)

On November 3, 2014, the plaintiffs had the House demolished, and saved none of the debris for a further inspection by State Farm. (ECF No. 29-1 at 25.) Furthermore, the plaintiffs did not take any photographs — either after their contactor allegedly advised them to rebuild or right before the demolition of the House — of the interior or the subflooring of the House after all of their personal belongings had been removed. (ECF No. 29-2 at 8; ECF No. 29-4 at 25, 45.) In fact, plaintiff Anderson testified at her deposition that she only took photographs of the plaintiffs' belongings in order to seek coverage under the insurance policy for personal property losses. (ECF No. 29-4 at 45.)

On May 1, 2015, almost 18 months after the fire damaged the House, the plaintiffs for the first time provided State Farm with a copy of a signed contract with their contractor to demolish and rebuild the House at a cost of $415,600, and they sought further payments under the Policy. (ECF No. 29-1 at 25.) In response, State Farm sent the plaintiffs a check for a residual amount based on State Farm's original repair estimate, and thereafter sent an additional payment to reimburse the plaintiffs for certain permit fees and professional fees when the plaintiffs submitted further documentation in

support of same. As a result, State Farm paid the plaintiffs the amount of $219,502.44 in total to pay for repairs to the House, an amount that the plaintiffs do not deny that they have received. (ECF No. 29-1 at 25, 30; ECF No. 29-6 at 3; ECF No. 35 at 8.) The plaintiffs did not find this amount to be acceptable, and brought this action for breach of contract against State Farm. (ECF No. 1-1; ECF No. 20.)[1]

In or around April 2017, State Farm's expert engineer reviewed the documents and the photographs in existence that provided any details of the damage to the House. (ECF No. 29-1 at 32.) Even though that expert did not have an opportunity to inspect either the House in general right before it was demolished, or the debris after the House had been demolished, he nonetheless concluded that the damage to the House was repairable. (*Id.*; *see also* ECF No. 34-10 at 5–6 (transcript of deposition of State Farm's expert engineer).)

## II. Motion for summary judgment

State Farm raises three arguments in support of its motion for summary judgment. First, State Farm argues that it is entitled to summary judgment because the plaintiffs violated the 60 Day Provision by failing to submit a claim for what they alleged to be the full cost to repair the House within 60 days of the fire —in fact, State Farm argues that this lawsuit was the plaintiffs' first notice that they disagreed with State Farm's estimate — and that as a result the plaintiffs are not entitled to further reimbursement. (ECF No.

---

[1] The plaintiffs do not dispute the reimbursements provided by State Farm concerning their lost personal property and their related living expenses. Thus, this Opinion will only address the plaintiffs' dwelling coverage.

7

29-1.) In opposition, the plaintiffs argue that State Farm is estopped from asserting the 60 Day Provision as a basis for summary judgment due to its course of conduct with them after the fire, because State Farm never sought to enforce the 60 Day Provision until this lawsuit was instituted. (ECF No. 34.)

Second, State Farm argues that it is entitled to summary judgment because the plaintiffs violated the Display Provision by demolishing the House before State Farm had an opportunity to perform a complete inspection of the House's interior pursuant to the terms of the Policy, and thus State Farm was unable to determine if the plaintiffs were entitled to be reimbursed for further repairs. (ECF No. 29-1.) In opposition, the plaintiffs argue that they did in fact adequately exhibit the House for State Farm's inspection, that they should not be punished because State Farm performed an inadequate inspection in the first instance, and that whether State Farm was acting reasonably in seeking a further inspection and whether they behaved reasonably in demolishing the House are issues of fact. (*See* ECF No. 34.)

Third, State Farm argues that even if the plaintiffs did not violate the Display Provision as a matter of law, it is entitled to summary judgment because the plaintiffs violated the general principle that bars the spoliation of evidence when they demolished the House without giving State Farm an opportunity to further examine the damage. Thus, State Farm argues that it is unable to defend against the assertion that it did not reimburse the plaintiffs for a proper amount based on the damage observed by its employees. (*See* ECF No. 29-1.) State Farm points out that there are no photographs or

reports about the state of the House at the point that it was demolished, and thus the plaintiffs have prevented it from being able to defend itself as far as the plaintiffs' claim for further reimbursement is concerned. (*Id.*) In opposition, the plaintiffs argue that they did not engage in spoliation of evidence, but that "to the extent this court deems any sanction is necessary, this court could implement the far lesser sanction of a spoliation inference." (ECF No. 34 at 20.)[2]

## ANALYSIS

### I. Summary judgment

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment that is made pursuant to Rule 56, because that standard has been already enunciated. *See* Fed. R. Civ. P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (setting forth the summary judgment standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the summary judgment standard).

### II. The 60 Day Provision

It cannot be contested that the plaintiffs did not submit a signed, sworn statement concerning their alleged specifications of the damage to the House and their alleged

---

[2] State Farm does not request that the amount that it has already paid to the plaintiffs be returned, and thus concedes that the amount it has paid thus far is the amount it believes that the plaintiffs should receive for the dwelling loss at issue.

9

detailed estimates for repair of that damage within 60 days of the fire. However, the plaintiffs have demonstrated that there is an issue of fact as to whether State Farm is estopped from relying upon the 60 Day Provision at this juncture, based upon the conduct of its employees.

The fire occurred on December 9, 2013. A State Farm representative did an initial inspection of the House soon thereafter, but State Farm has pointed the Court to no evidence that State Farm or its representatives advised the plaintiffs that they were in danger of not being covered if they failed to submit their own repair estimates within 60 days of the fire. Indeed, State Farm: (1) performed a further inspection of the damage to the House in April 2014; (2) sent the plaintiffs a sizable reimbursement check in the amount of $179,571.37 in May 2014; (3) expressed a willingness to consider a counter-estimate from the plaintiffs; and (4) sent the plaintiffs another reimbursement check around May 2015. All of that conduct occurred well after the time period of the 60 Day Provision had expired. As a result, State Farm cannot now seek to bar the plaintiffs as a matter of law from proceeding due to their failure to abide by the 60 Day Provision, particularly where its own conduct indicated to the plaintiffs that it was not imposing such a deadline upon them. *See Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 N.J. 442, 448–49 (1966) (holding that an insurer was estopped from asserting that an insured failed to submit timely proof of loss, because before the deadline the insurer led the insured to believe that the requirement would not be enforced); *Weil v. Pa. Fire Ins. Co.*, 58 N.J. Super. 145, 152 (N.J. App. Div. 1959) (holding that an insurer was estopped from

asserting that an insured failed to submit proof of loss within the policy requirement of 60 days because the insurer, which remained in contact with the insured during and after that 60-day period, did not suggest that it would enforce the requirement). Therefore, State Farm is not entitled to summary judgment on this issue.

### III. The Display Provision

State Farm made it clear to the plaintiffs that it wanted to perform a further inspection of the damage to the House. However, the plaintiffs have demonstrated that there is an issue of fact as to whether State Farm acted in a reasonable manner under the circumstances while dealing with the plaintiffs before they instituted this litigation.

The Display Provision provides that the plaintiffs had a duty to "exhibit the damaged property" to State Farm "as often as [State Farm] reasonably require[s]." (ECF No. 29-1 at 17.) However, whether it was "reasonable" for State Farm to require yet another inspection of the damage before the House was demolished, and conversely whether it was "reasonable" for the plaintiffs to demolish the House at that juncture before permitting State Farm to conduct a further inspection, are issues of fact for trial, particularly when those facts are viewed in the light that is most favorable to the plaintiffs. *See Scipio v. Phila. Contributorship Ins. Co.*, No. 12-7722, 2017 WL 1025181, at *2, *5 (D.N.J. Mar. 16, 2017) (denying an insurer's motion for summary judgment on the issue of whether an insured seeking further reimbursement for property damage complied with a cooperation clause that is nearly identical to the Display

Provision, because there were genuine issues of fact as to the reasonableness of the conduct of all of the parties); *see also Township of Piscataway v. Duke Energy*, 488 F.3d 203, 214 (3d Cir. 2007) (concluding that whether the defendant energy company acted in a "reasonable" manner by removing trees without the permission of the plaintiff township or the plaintiff homeowners in order to engage in aerial surveillance of its pipelines, was a triable issue of fact that compelled the denial of summary judgment).

It is regrettable that the plaintiffs did not invite State Farm to inspect the House again before they had it demolished, or that — as the plaintiffs' counsel conceded at oral argument — the plaintiffs did not seek to engage in further negotiations with State Farm before resorting to litigation. However, those are factors to be weighed at trial. (*See* ECF No. 47 at 33.) *See Haardt v. Farmer's Mut. Fire Ins. Co.*, 796 F. Supp. 804, 810 (D.N.J. 1992) (denying an insurer's request for summary judgment for an insured's alleged failure to cooperate with the investigation of the insured's damage claim, as an issue of fact remained on whether the insurer was appreciably prejudiced by the insured's conduct). Therefore, State Farm is not entitled to summary judgment on this issue.

## IV. Spoliation

The Court is authorized to grant summary judgment in favor of the party seeking access to certain evidence when that party's adversary has engaged in the spoliation of that evidence. Spoliation is defined as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Capogrosso v. 30 River*

*Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (quoting *Mosaid Techs. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).

The Court may consider both federal law and state law in addressing the issue of spoliation, and must:

> consider (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and . . . deter such conduct by others in the future.

*Id.*

However, the Court is not limited to entering judgment against a spoliator. For instance, the Court has the discretionary authority to instead exclude the spoliated evidence, or to issue an instruction to the finder of fact allowing for an adverse inference that would assume that the spoliated evidence would have been unfavorable to the spoliator. *See N.V.E. v. Palmeroni*, No. 06-5455, 2011 WL 4407428, at *4 (D.N.J. Sept. 21, 2011); *see also Indem. Ins. Co. of N. Am. v. Electrolux Home Prods., Inc.*, 520 F. App'x 107, 111 (3d Cir. 2013) (holding that a district court did not abuse its discretion in determining that an adverse inference instruction was warranted due to spoliation).

The plaintiffs do not dispute the fact that they did not notify State Farm that they sought further reimbursement for the damage to the House until one year after State Farm provided its last repair estimate, and several months after the House had been completely demolished. Furthermore, State Farm had informed the plaintiffs that: (1) it believed that it was unable to perform a complete inspection of the House because an excessive amount of the plaintiffs' personal belongings was in the way; (2) it wanted to perform a

complete inspection of the House's interior when the House was free of the plaintiffs' personal belongings; and (3) it wanted the opportunity to conduct a further inspection if the plaintiffs disagreed with State Farm's estimate for the cost of repairing the House to its original condition. Additionally, a State Farm representative advised the plaintiffs a few days before they had the House demolished that they should not demolish the House if they wanted to challenge State Farm's repair estimate, in order to give State Farm an opportunity to conduct another inspection. Thus, the plaintiffs should have known that the extent of the costs to repair the damage to the House could still be in dispute.

However, the Court cannot conclude that the plaintiffs behaved in bad faith as a matter of law or that their conduct merits the ultimate sanction of the entry of summary judgment against them. Furthermore, the Court finds that the exclusion of the plaintiffs' evidence concerning the damage to the House would be inequitable to these plaintiffs, particularly because State Farm's own expert engineer was able to conclude that the damage to the House could be repaired based upon his review of documents and photographs alone. Therefore, the Court concludes that the entry of an adverse spoliation inference against the plaintiffs would be more appropriate in this instance, in order to serve equity as to the plaintiffs and to serve the ends of justice as to State Farm, and thereby place the parties on a level playing field. *See N.V.E.*, 2011 WL 4407428, at *6–*7 (issuing such an inference rather than harsher sanctions where a party spoliated certain evidence, because the evidence was in the party's control, the evidence was actually destroyed, the evidence was relevant to the issues at hand, and it was reasonably foreseeable that the evidence would be discoverable); *see also 18-01 Pollitt Drive, LLC v.*

*Engel*, No. A-4833-13T3, 2016 WL 6407280, at *7–*8 (N.J. App. Div. Oct. 31, 2016) (holding that it was reversible error for a court to fail to consider the lesser sanction of an adverse spoliation inference, rather than resorting to the ultimate sanction of dismissal, even where the plaintiff in that action had disposed of the corroded pipe and dilution sumps that were at the heart of an environmental contamination case).

Therefore, the Court denies State Farm's request for summary judgment based upon spoliation. However, the Court grants the request for an adverse inference jury instruction based upon spoliation of the evidence at issue, *i.e.*, the plaintiffs' demolition of the House. The exact wording of that adverse spoliation inference should be addressed by the parties by way of a motion *in limine* prior to the time of trial.

## CONCLUSION

For the aforementioned reasons, the Court denies State Farm's motion for summary judgment. However, the Court grants the request for an adverse spoliation inference against the plaintiffs, the wording of which will be determined at a later point. The Court will enter an appropriate order.

JOSE L. LINARES
Chief Judge, United States District Court

Dated: January 30th, 2018